IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AMY ANNETTE BUCK and
BRANDON BUCK                                                           PLAINTIFFS

v.                      No. 4:22-cv-1265-DPM

KIA AMERICA, INC., f/k/a
KIA MOTORS AMERICA, INC.                                        DEFENDANT

ORDER

The engine compartment of Amy Buck's 2012 Kia Optima spontaneously caught fire while she was driving with her son, Brandon. The brakes failed, so Buck and her son had to jump from a moving, flaming vehicle on the side of a freeway in Plano, Texas. The fire occurred in 2017. Kia issued two recalls for vehicles like Buck's. The most relevant was in 2023. It identified a problem in certain 2011-2015 Optimas.

> An engine compartment fire may occur in the area where the Hydraulic Electronic Control Unit (HECU) is located. It is believed that over time, the HECU experiences an electrical short circuit condition that results in excessive current, thereby increasing the risk of an engine compartment fire while driving or parked. However, the exact cause of the electrical short circuit remains unknown.

*Doc. 23-6 at 5*. The other recall was in 2017. It warned drivers of 2011-2014 Optimas about another problem.

> Metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft which may not have been completely removed from the crankshaft's oil passages during the cleaning process.  In addition, the machining processes of the crankpins caused an uneven surface roughness.  As a result, the metal debris and uneven surface roughness can restrict oil flow to the bearings, thereby increasing bearing temperatures causing premature bearing wear.  A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the engine warning lamp and/or oil pressure lamp in the instrument panel.  If the warnings are ignored and the vehicle is continued to be driven, the bearing may fail and the vehicle could stall while in motion.

*Doc. 23-5 at 2*.  In 2020, Kia agreed to a related consent order from the National Highway Traffic Safety Administration.  The NHTSA found that the 2017 recall was untimely; it also concluded that Kia's related report about that defect contained incorrect information.  *Doc. 23-2 at 3*.

Buck has brought products liability claims (both strict liability and negligence) against Kia.  Her son has a related personal injury claim.  They're Arkansawyers.  And the parties agree that Arkansas law applies to the Bucks' claims.  The company requests summary judgment, arguing mainly that Ms. Buck has insufficient proof that her Optima actually had a defective part.  *St. Jude Medical, Inc. v. Lifecare International, Inc.*, 250 F.3d 587, 595 (8th Cir. 2001).  Buck points to the recall notice, the consent order, and her declaration, which—echoing the 2023 notice—says her car's engine compartment caught on fire

while she was driving.  Her difficulty is that her Kia burned up on the side of the highway, and the hulk was eventually scrapped without being examined.  She notified Kia about the fire, but the company never inspected what was left of her Optima.  She took some photos, but had no inspection done.  In sum, no inspection or examination of the vehicle ever occurred.

Kia is entitled to judgment as a matter of law on Buck's claims.  Arkansas law has not materially changed since I decided *Oliphant v. FCA US LLC*, a similar alleged-defect case about a stalled pickup truck.  *Doc. 42* in Case No. 3:18-cv-33-DPM (E.D. Ark. 12 April 2019).  Buck hasn't produced expert testimony about whether her Optima, or every 2012 Optima, had problems with the hydraulic electronic control unit or the engine bearings.  *Yielding v. Chrysler Motor Co., Inc.*, 301 Ark. 271, 274, 783 S.W.2d 353, 355 (1990); *Mixon v. Chrysler Corp.*, 281 Ark. 202, 205-06, 663 S.W.2d 713, 714-15 (1984).  Importantly, she admits that some, but not all, 2012 Optimas had these defects.  *Doc. 23 at 3-4*.  But because her car was destroyed, no one can inspect it to determine whether either of these defects existed in her Optima.  Kia's expert also points to several other possible causes of the fire.  *Doc. 17-6 at 11-13*.  And Buck hasn't produced solid evidence rebutting those possibilities.  *Yielding*, 301 Ark. at 274, 783 S.W.2d at 355.

Although the recall notices and the consent order support Buck's defect claims, taking the whole record in the light most favorable to her,

the most that can be reasonably concluded is that her 2012 Optima may have had one of the alleged defects. "Without vehicle-specific evidence that it did, the jury would be left to guess between the possibility that it did and the possibility that it didn't." *Doc. 42 at 4* in *Oliphant v. FCA US LLC*, Case No. 3:18-cv-33-DPM (E.D. Ark. 12 April 2019). That's not enough to create a genuine dispute of material fact. *Mixon*, 281 Ark. at 205, 663 S.W.2d at 714.

*   *   *

Kia's motion for summary judgment, *Doc. 17*, is granted. Judgment will issue.

So Ordered.

*/s/ WP Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

19 September 2024